UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

SAMUEL S. UPTHEGROVE,
    Plaintiff,
    v.
LESLIE BAIRD, KURT SCHWEBKE,
CO ISAACSON, CO SWENSON, CO MILLARD,
SGT. HART,
    Defendants.

Case No. 15 C 509

## CIVIL RIGHTS COMPLAINT UNDER

## 42 USC s. 1983

Plaintiff, Samuel S. Upthegrove, **pro se**, files this action under 42 USC s.1983 alleging that the defendants were deliberately indifferent to his safety in Violation of his constiutional rights. Plaintiff seeks compensatory and punitive damages, and hereby makes his demand for a jury trial.

### I. jurisdiction

1. This Court has jursdiction of this action pursuant to 28 USC ss. 1331 and 1343.

### II. PARTIES

2. Plaintiff, Samuel S. Upthegrove, is currently a prisoner confined at the Green Bay Correctional Institution. At times relevant hereto, he was a prisoner confined at the Columbia Correctional Institution at Portage, Wisconsin.

3. Defendant Leslie Baird was a psychologist at CCI.

4. Defendant Kurt Schwebke was a psychologist at CCI.

5. Defendant CO Isaacson was a correctional officer at CCI.

6. Defendant CO Swenson was a correctional officer at CCI.

7. Defendant CO Millard was a correctional officer at CCI.

8. Defendant Sgt. Hart was a correctional officer at CCI.

9. With respect to the allegations of this complaint, each defendant was acting under color of state law.

### III. ALLEGATIONS OF FACT

10. On June 7, 2010 at about 7:00 AM, Upthegrove, who was housed in CCI's DS-1 unit, notified Isaacson and two other staff that he was having thoughts of harming himself, specifically that he was considering cutting himself. Because Isaacson and the other officers were aware of Upthegrove's history of serious self-harm, psychological services staff were called. It should be noted that Upthegrove was in regular segregation status at the time and had property in his possession that could be used to self-harm (e.g., a pen).

11. Shortly thereafter, defendants Baird and Schwebke came to Upthegrove's cell front to speak with him. Upthegrove told Baird and Shwebke that he was upset about his financial obligations and other various things, and was thinking of harming himself to cope with his frustration. Near the end of the conversation, Upthegrove told Baird and Schwebke that he still wanted to cut himself and would do so unless staff intervened. Despite Upthegrove's statements, Baird and Schwebke left without taking any preventive measures such as placing him in observation status and/or restraints.

12. About 30 minutes later, Upthegrove yelled to CO Swenson that he was going to cut himself. Upthegrove yelled this to Swenson several times before Swenson closed the door to the cell block, choosing to ignore Upthegroves statements.

13. At approximately 9:00 AM, CO Isaacson did a round and Upthegrove asked him if he was going to hand out supplies as Upthegrove needed to file a complaint. CO Isaacson did not verbally respond, instead smiling at Upthegrove sarcastically. This upset Upthegrove, who then told Isaacson several times in an angry voice that he was going to cut himself. Isaacson simply smiled again and walked off the cell block, slamming the door behind him.

14. Upthegrove then gave in to his urges and proceeded to cut himself with a pen insert. He began bleeding profusely with blood squirting from his arm. He was discovered shortly thereafter by CO Garrison and Lt. Berkebill. Upthegrove was transported to the local hospital and had his wound sewn shut with five sutures. Upthegrove was placed in observation status upon return to CCI.

15. Defendants Baird, Schwebke, Isaacson and Swenson were all aware of Upthegrove's propensity to engage in self-harm, but ignored his repeated statements that he was going to cut himself. They failed to make any intervention such as placing him in observation and/or restraints, and thus allowed him to engage in self-harm, turning a blind eye to his pleas for help.

16. The next day at approximately 10:00 PM, and while still in observation status, Upthegrove asked CO Millard if Millard cared if Upthegrove hurt himself. Millard replied, "Yes...Do we really have to go that route tonight?" Upthegrove responded, "Yeah. I think I'm going to cut myself." Millard did not further respond and left.

17. Upthegrove proceeded to cover the camera in his cell with toilet paper, and a few minutes later began cutting himself

-3-

with a pen insert. Because the pen insert was not razor-sharp it took Upthegrove longer to cut himself than say it would take with a razor.

18. Upthegrove was required to be observed at least every 15 minutes while in observation status, but Sgt. Hart and CO Millard, who were responsible for checking on Upthegrove, failed to do so until almost an hour later at 11:00 PM. Hart did a round at that time and discovered Upthegrove had cut himself and called for a supervisor and nurse to respond. Upthegrove's wound was cleaned by the nurse and closed with superglue.

19. Defendants Millard and Hart failed to do the required observation checks and failed to intervene before Upthegrove cut himself when they should have known he would do so.

**WHEREFORE,** Plaintiff requests that the Court grant the following relief:

    A. An award of compensatory and punitive damages.
    B. Any other such relief the Court may deem just and equitable.

I, Samuel S. Upthegrove, swear under penalty of perjury that the foregoing complaint is true and correct.

Dated this 9th day of August, 2015.

Respectfully Submitted:

Samuel S. Upthegrove 469578
    --Plaintiff, pro se--

c/o Green Bay Corr. Inst.
P.O. Box 19033
Green Bay, WI 54307